IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| FREDRICK TUCKER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 1:23-cv-00037 |
| GRADY PERRY, Warden, et al., | ) ) | JUDGE CAMPBELL |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Fredrick Tucker, an inmate of the Northeast Correctional Complex (NECX) in Mountain City, Tennessee, filed this pro se civil rights action under 42 U.S.C. § 1983. (Doc. No. 1.) In September 2023, he filed an application for leave to proceed in forma pauperis (IFP) (Doc. No. 10) and supporting documentation. (Doc. No. 11.) On November 3, 2023, Plaintiff filed an Amended Complaint (Doc. No. 12) and a motion to appoint counsel. (Doc. No. 13.)

The case is before the Court for ruling on Plaintiff's IFP application and motion, and for an initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. PAUPER STATUS

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 10) is **GRANTED** and a $350 filing fee is **ASSESSED**.[1]

---

[1] While prisoners who are not granted pauper status must pay a total fee of $402—a civil filing fee of $350 plus a civil administrative fee of $52—prisoners who are granted pauper status are only liable for the $350 civil filing fee. *See* 28 U.S.C. § 1914(a)–(b) and attached District Court Miscellaneous Fee Schedule, provision 14 (eff. Dec. 1, 2020).

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

The Court must conduct an initial review and dismiss the Amended Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. Review for whether the Amended Complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff filed this action under § 1983, which authorizes a federal suit against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983.

**B. Allegations and Claims**

Plaintiff seeks to recover for injuries inflicted by officials at the South Central Correctional Facility (SCCF) in Clifton, Tennessee, where he was formerly incarcerated. He sues Warden Grady Perry, Tennessee Department of Correction (TDOC) Commissioner Frank Strada, Captain Jordan Clark, Unit Manager Tilly, and STG Coordinator Franks. (Doc. No. 12 at 1.)

Plaintiff alleges that he filed a lawsuit over prison conditions at SCCF in November 2021, and thereafter faced retaliation by SCCF officials. (*Id.* at 3.) On April 25, 2023, Plaintiff was removed from the SCCF Annex "per Warden Perry." (*Id.* at 6.) A case manager told him that he was being moved from the Annex to the compound "for refusing to go to medical," even though prison policy # 113.51(b) allows an inmate to refuse medical treatment. (*Id.*) Because Plaintiff faced death threats from unnamed sources on the compound, of which all Defendants were aware,

he "felt that he had no choice but to refuse cell assignment (R.C.A.)" (*Id.*) He alleges that Warden Perry thus "deliberately created a scenario that would result in disciplinary action per policy." (*Id.*)

As part of a strategy to eventually transfer Plaintiff to another facility that was "not an annex," Defendants did not charge him with R.C.A. until May 10, 2023. (*Id.* at 7.) When he was removed from the Annex on April 25, he was escorted to medical "before going to segregation," even though previous requests for an escort to medical had been denied. (*Id.*) Plaintiff was then taken to segregation, where he was held for 51 days. (*Id.* at 4.)[2] During his time in segregation, Plaintiff "used the PREA[3] hotline to report staff misconduct concerning threats by Warden Perry and Unit Manager Tilly," but such reports were improperly dismissed by STG Franks instead of being reviewed and investigated by an outside agency. (*Id.*) Franks then called Tilly back to Plaintiff's cell, "where more threats were made." (*Id.*) Franks also announced to the other inmates in the pod that Plaintiff had called the PREA hotline over 40 times, in an attempt to paint Plaintiff as a snitch, "because the PREA line is referred to as the 'snitch-line.'" (*Id.*)

Plaintiff alleges that Defendants' actions caused him to lose his prison job and prevented him from qualifying for "better prison jobs such as TRICOR," without due process. (*Id.* at 5.) He alleges that Captain Jordan Clark found him guilty of R.C.A. without due process, and that the resulting disciplinary points he accrued disqualified him from assignment to an annex. (*Id.* at 8.) During his 51-day stint in segregation, "he was housed in conditions that fell considerably below the required standards of decency concerning blood, feces, black mold, urine, rust, and poor

---

[2] The pages of the Complaint appear to have been docketed out of sequence. The Court believes the proper chronology of events to be as recounted above.

[3] PREA is an acronym for the Prison Rape Elimination Act, 34 U.S.C. § 30301 *et seq.*

4

ventilation," and had his blood pressure medication, asthma inhalers, and cholesterol medications withheld for weeks. (*Id.*)

After filing a grievance on June 12, 2023, Plaintiff was returned to the Annex on June 13. (*Id.* at 8–9.) He had a grievance hearing on June 19. (*Id.* at 9.) He alleges that "the response from Asst. Warden Helen Moon establishes Plaintiff was never moved to segregation for any punitive or disciplinary purpose, only medical." (*Id.*) On June 21, Plaintiff was transferred to NECX, where his problems with being assigned housing with incompatible inmates continued. (*Id.*) Plaintiff alleges that he and his family corresponded with TDOC Commissioner Frank Strada about his complaints, but that Strada ignored them. (*Id.* at 10.)

**C. Analysis**

Plaintiff claims that Warden Perry ordered his removal from the SCCF Annex on April 25, 2023, in retaliation for his filing of a grievance and subsequent lawsuit against Perry and SCCF staff in 2021.[4] "When a prison official retaliates against a prisoner for exercising the First Amendment right to access the courts or to file a grievance, the official threatens to inhibit exercise of the . . . right and violates the Constitution." *McClure v. Johnson*, No. 1:15-CV-00035, 2019 WL 13444614, at *15 (M.D. Tenn. July 24, 2019), *report and recommendation adopted*, No. 1:15-CV-00035, 2019 WL 13444613 (M.D. Tenn. Aug. 13, 2019) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 n.9 (6th Cir. 1999)) (internal quotation marks omitted). To succeed on his First Amendment retaliation claim, Plaintiff must show that: "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one

---

[4] *See Tucker v. Perry, et al.*, No. 1:21-cv-00073 (M.D. Tenn.) (dismissed with prejudice on Aug. 7, 2023).

5

and two—that is, the adverse action was motivated at least in part by [his] protected conduct." *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018).

The filing of nonfrivolous grievances and, ultimately, a lawsuit concerning prison conditions is conduct protected by the First Amendment. *Id.* at 264 (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)); *Thaddeus-X*, 175 F.3d at 395–96. Construing the Amended Complaint in the light most favorable to Plaintiff, the Court finds that, at least for purposes of initial review, it is reasonable to infer that Warden Perry took a sufficiently adverse action against Plaintiff by reassigning him from the Annex to the general population—where there had been "threats placed upon his life" of which Perry was "completely aware" (Doc. No. 12 at 6)—knowing that Plaintiff would refuse reassignment and incur disciplinary action which would in turn have ill effects on Plaintiff's opportunities for better prison jobs and his eligibility for placement in an annex upon transfer to a different institution. *See Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005) (finding that defendant's action, which he knew "would lead inexorably to the plaintiff's transfer" and would have foreseeable negative consequences for the plaintiff related to, e.g., prison job opportunities, was sufficient for a reasonable factfinder to conclude that adverse action had been shown). Finally, Plaintiff alleges that the grounds he was given for the reassignment—his refusal of medical treatment—had not been used to justify any administrative action on the prior occasions when Plaintiff had refused medical treatment, as inmates are explicitly permitted to do under "Policy # 113.51(b)." (Doc. No. 12 at 6.) Viewing these allegations in Plaintiff's favor at this early stage, they support the reasonable inference that his reassignment may have been causally connected to his then-ongoing lawsuit, rather than solely the result of his refusal of medical treatment. Accordingly, Plaintiff's First Amendment retaliation claim against Warden Perry will proceed for further development.

Plaintiff also asserts retaliation claims against Unit Manager Tilly and STG Coordinator Franks. He alleges that, in response to his use of the PREA hotline while in segregation to report "threats by Warden Perry and Unit Manager Tilly," Defendant Franks called Tilly to Plaintiff's cell, where both Defendants further threatened Plaintiff and Franks proceeded to "announce[] to the inmates in the pod how Plaintiff called the PREA hotline over 40 times, in an attempt to demonstrate [that] Plaintiff was a snitch, because the PREA line is referred to as the 'snitch-line.'" (Doc. No. 12 at 4.) Although it is unclear whether Plaintiff's use of the PREA hotline "to report staff misconduct concerning threats" was a non-frivolous, non-abusive use of that system, *see King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012) (finding that "[a]busive or manipulative use of a grievance system" is not protected conduct), the Court gives Plaintiff the benefit of the doubt at this early stage and, for purposes of initial review, finds it reasonable to infer from his allegations that he (1) engaged in protected conduct, *see Jackson v. Wicking*, No. 3:20-CV-00249, 2020 WL 6874963, at *3 (M.D. Tenn. Nov. 23, 2020) (presuming that a non-frivolous complaint under PREA is protected conduct), and (2) suffered an adverse action—being effectively labeled a snitch—that (3) was causally connected to his PREA grievances. *See Jones v. Siwanowicz*, No. 1:20-CV-421, 2022 WL 1694150, at *3 (W.D. Mich. Apr. 18, 2022), *report and recommendation adopted*, No. 1:20-CV-421, 2022 WL 1690781 (W.D. Mich. May 26, 2022) ("Courts within the Sixth Circuit have recognized that labeling a prisoner a 'snitch' or a 'rat' in front of other prisoners can be sufficiently adverse to deter a prisoner from engaging in protected conduct.") (citing cases). The First Amendment retaliation claim against Tilly and Franks will proceed for further development.

Next, Plaintiff claims that Capt. Jordan Clark violated his right to procedural due process by finding him guilty of R.C.A. without notice, based on the fact that, "[a]t SCCF, there is an

automatic 'guilty' on an R.C.A., and an inmate is not allowed to defend himself against the charges." (Doc. No. 12 at 8.) "The Supreme Court has provided two steps for analyzing procedural due process claims: (1) 'whether there exists a liberty or property interest which has been interfered with by the State' and (2) 'whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Bethel v. Jenkins*, 988 F.3d 931, 942 (6th Cir. 2021) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Plaintiff alleges that he was escorted to segregation on the same day that he refused his cell assignment on the compound (though he was not charged with R.C.A. until 16 days later) and that he remained in segregation for 51 days, until he filed a "reprisal grievance" on June 12, 2023 and was returned to the Annex the following day. (Doc. No. 12 at 7, 8–9.) He also alleges that Assistant Warden Helen Moon found, after a hearing on the "reprisal grievance," that "Plaintiff was never moved to segregation for any punitive or disciplinary purpose, only medical." (*Id.* at 9.) These allegations suggest that Plaintiff's segregation was initially related to his refusal of medical treatment rather than to his R.C.A. charge, which was delayed for 16 days and decided on a date not revealed in the Amended Complaint. Between these ambiguities and the fact that the only consequences attributed to Clark's disciplinary decision were the loss of job opportunities and confinement to segregation for roughly one month, the Court finds that no plausible procedural due process claim is stated. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (holding that a sentenced inmate's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); *Bethel*, 988 F.3d at 943 (citing *Dobbins v. Craycraft*, 423 F. App'x 550, 552 (6th Cir. 2011) (applying *Sandin* to find that "Dobbins' procedural due process claim against Besteman was properly dismissed for failure to allege a liberty or property interest" given that he had "no constitutional right to prison employment because the loss of his position

d[id] not impose an atypical and significant hardship . . . in relation to the ordinary incidents of prison life")). This claim, and Defendant Clark, will be dismissed from this case.

Plaintiff claims an Eighth Amendment violation due to the conditions of segregated confinement and the temporary withholding of medications, but this claim is not plausibly alleged. The Amended Complaint briefly and broadly refers to "conditions that fell considerably below the required standards of decency concerning blood, feces, black mold, urine, rust, and poor ventilation," without further detail; it also contains the bare assertion that Plaintiff was denied preventative medications for blood pressure and cholesterol, along with asthma inhalers, "for weeks." (Doc. No. 12 at 8.) Even if additional factual detail had been provided, Plaintiff does not allege any particular injury that resulted from these conditions. "Without an allegation of injury or harm, a plaintiff does not state a viable Eighth Amendment claim." *Vick v. Core Civic*, 329 F. Supp. 3d 426, 452 (M.D. Tenn. 2018) (citing *Moore v. Merchant*, No. 5:13CV-P81-R, 2013 WL 6590395, at *4 (W.D. Ky. Dec. 16, 2013) (finding that, "[i]n any event, Merchant does not allege that he was subjected to any physical injury as a result of the actual conditions in the segregated housing unit, and 42 U.S.C. § 1997e(e) precludes any claim by a prisoner 'for mental or emotional injury suffered while in custody without a prior showing of physical injury.'")). Accordingly, Plaintiff's Eighth Amendment claim will be dismissed.

Finally, Plaintiff's only allegation against TDOC Commissioner Strada is that Strada ignored letters from Plaintiff and his family concerning his mistreatment at SCCF and NECX. (Doc. No. 12 at 10.) To the extent that Strada's inaction is asserted to claim his liability as supervisor over the state prison system, no plausible claim is stated. The Sixth Circuit has "long held that supervisory liability requires some active unconstitutional behavior on the part of the supervisor," *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citations and internal

quotation marks omitted), and Strada is not alleged to have been actively involved in any violation of Plaintiff's rights. He will be dismissed from this case.

### III. MOTION TO APPOINT COUNSEL

Plaintiff has filed a Motion to Appoint Counsel. (Doc. No. 13.) An indigent plaintiff in a civil action, unlike a criminal defendant, has no constitutional right to the appointment of counsel; rather, the appointment of counsel in such cases is a privilege "justified only in exceptional circumstances." *Miles v. Michigan Dep't of Corr.*, No. 19-2218, 2020 WL 6121438, at *4 (6th Cir. Aug. 20, 2020) (citing *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003), and *Lavado v. Keohane*, 992 F.2d 601, 606–07 (6th Cir. 1993)). As no such circumstances are yet readily apparent, the Motion to Appoint Counsel (Doc. No. 13) is **DENIED WITHOUT PREJUDICE** to renewal if warranted after service of process is accomplished.

### IV. CONCLUSION

As explained above, the Amended Complaint states nonfrivolous claims against Defendants Perry, Tilly and Franks that will proceed for further development. Accordingly, the Clerk is **INSTRUCTED** to send Plaintiff a service packet (blank summons and USM 285 form) for each of these three Defendants. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the date of this Order. Upon return of the completed service packets, **PROCESS SHALL ISSUE**.

Defendants Clark and Strada are **DISMISSED** from this action.

The Court's determination that the Amended Complaint states colorable claims for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE